IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

HUGH AND CHERYL BOHRER, as
Legal Guardians for M.G.
A minor, under the age of Eighteen

     Plaintiff,

v.                     Civil Action: 3:08-CV-144
                      (Chief Judge Bailey)

CITY HOSPITAL, INC., et al.,

     Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR RECUSE

I. Introduction

A. Background

This action was filed on behalf of M.G., a minor, on September 22, 2008, under the Federal Tort Claims Act alleging negligence by Defendants causing permanent injuries to the minor child at birth. Pursuant to 28 U.S.C. § 636(b)(1), the District Court referred certain discovery matters to me.[1] Plaintiff filed this Motion to Recuse alleging that I have conflicts of interest in the case and should therefore be recused from the proceedings.

B. The Motion

Plaintiff's Motion to Recuse Magistrate Judge James Seibert.[2]

C. Decision

---

[1] Doc. No. 119.

[2] Doc. No. 153.

1

Plaintiff's Motion to Recuse is **DENIED** as set forth.

## II. Facts

1. On August 19, 2009, Robert Clancy, M.D., ("Dr. Clancy") was designated as an expert witness for Defendant.

2. On August 19, 2009, Defendant United States ("Defendant") filed a Motion to Dismiss for Lack of Jurisdiction.[3]

3. On August 19, 2009, Plaintiff filed Certificate of Service for Notice of Deposition of Robert Clancy, M.D.[4] No date was indicated on the Certificate.

4. On August 28, 2009, Plaintiff filed Certificate of Service for Amended Notice of Deposition of Robert Clancy, M.D.[5] No date was indicated on the Certificate.

5. On September 1, 2009, Plaintiff filed Motion to Extend Time for Response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction Until the Close of Discovery.[6]

6. On September 3, 2009, Defendant filed Motion for Protective Order.[7]

7. On September 10, 2009, this Court held a hearing on Defendant's Motion for Protective Order.[8]

---

[3] Doc. No. 101.

[4] Doc. No. 103.

[5] Doc. No. 110.

[6] Doc. No. 114.

[7] Doc. No. 118.

[8] Doc. Nos. 126, 134.

8. On September 10, 2009, the District Court granted Plaintiff's Motion to Extend Time for Response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction Until the Close of Discovery.[9]

9. On September 14, 2009, this Court issued an Order Confirming Pronounced Order of the Court Granting Motion for Protective Order as Framed Temporarily and Setting a Process for the Deposition to be Set.[10]

10. On September 18, 2009, Plaintiff filed Response to Defendant's Motion for Protective Order and Objection to the Court's Order.[11]

11. On September 22, 2009, Defendant filed Reply to Plaintiff's Response to the Motion for Protective Order and Objections to the Court's Order.[12]

12. On October 14, 2009, this Court issued an Order Affirming Order Confirming Order of the Court Granting Motion for Protective Order as Framed Temporarily and Order Confirming Pronounced Order of the Court Granting Motion for Protective Order as Framed Temporarily.[13]

13. On October 28, 2009, Plaintiff filed Motion for Recusal of Magistrate Judge

---

[9] Doc. No. 127.

[10] Doc. No. 132.

[11] Doc. No. 137.

[12] Doc. No. 138.

[13] Doc. No. 142.

James Seibert.[14]

14. On November 6, 2009, Defendant filed its Response to Plaintiff's Motion to Recuse Magistrate Judge Seibert.[15]

15. On November 12, 2009, an evidentiary hearing and argument was held on Plaintiff's Motion to Recuse.[16]

16. **PLAINTIFF OFFERED NO EVIDENCE TO SUPPORT THIS MOTION AT THE EVIDENTIARY HEARING.**

III. Discussion

A. Contentions of the Parties

Plaintiff alleges that the record mandates recusal of the Court because of a preexisting, nondisclosed relationship with counsel for Defendant and a fractious relationship with counsel for Plaintiff. In support of this allegation, Plaintiff argues that both relationships create an appearance of impropriety. Specifically, Plaintiff alleges that the Court has an attorney-client relationship with defense counsel's spouse, the Court has a history with defense counsel's family dating back to the 1980s when the Court was involved with a campaign for defense counsel's brother-in-law, the Court's spouse has a relationship with defense counsel, and the Court's sister has an attorney-client relationship with defense counsel's spouse. Plaintiff further alleges that a financial incentive exists because of the alleged attorney-client relationship between defense counsel's spouse and the Court. With regards to the allegation of the record revealing a fractious

---

[14] Doc. No. 153.

[15] Doc. No. 160.

[16] Doc. No. 166.

relationship, Plaintiff argues the Court mistakenly placed the burden on the non-moving party in the Defendant's Motion for Protective Order and personally attacked and criticized Plaintiff's counsel during the evidentiary hearing for Defendant's Motion for Protective Order.

In its Response to Plaintiff's Motion to Recuse, Defendant attempted to clarify allegations in Plaintiff's motion and filed an affidavit of the managing partner of the law firm of defense counsel's husband clarifying the relationship between the firm and the Court.

B.     Discussion

Title 28, United States Code, Section 455 provides "any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a) (2009).  Further, a justice, judge, or magistrate judge shall also disqualify himself if "he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person: is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding."  28 U.S.C. § 455(b)(5)(iii) (2009).  A judge shall not accept from the parties "a waiver of any ground for disqualification enumerated in subsection (b).  28 U.S.C. § 455(e) (2009).  However, a waiver may be accepted where the ground for disqualification arises under subsection (a) "provided it is preceded by a full disclosure on the record of the basis for disqualification."  Id. It is these three subsections of section 455 upon which Plaintiff relies to support its motion for recusal.

To determine whether a judge should disqualify himself because of a questionable impartiality, the correct inquiry is simply whether another, not knowing whether the judge is actually impartial, might reasonably question judge's impartiality on the basis of all the

circumstances, not whether the judge is impartial in fact. Rice v. McKenzie, 581 F.2d 1114, 1116-17 (4th Cir. 1978). Recusal is warranted where impartiality might reasonably be questioned by an objective observer in light of the facts, rather than by consideration of judge's actual state of mind, purity of heart, incorruptibility, or impartiality. U.S. v. Black, 490 F.Supp.2d 630, 655-56 (E.D.N.C. 2007). "The focus is on perception (i.e., appearance): whether sufficient factual grounds exist to cause an objective observer reasonably to question the judge's impartiality." Id. at 656 (citing Liteky v. U.S., 510 U.S. 540, 548-51 (1994)). A motion to recuse should be granted if the judge's impartiality is reasonably questioned. U.S. v. Lentz, 524 F.3d 501, 530 (4th Cir. 2008).

> 'Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.' Even remarks made 'that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.' The 'presiding judge is not . . . required to recuse himself simply because of unsupported, irrational or highly tenuous speculation.'

Id. (citing Liteky v. U.S., 510 U.S. 540, 555 (1994)).

"The Fourth Circuit described a 'nuanced approach' to determining when recusal is required under section 455(a)'s objective standard and examined four factors." Black, 490 F.Supp. at 656 (citing U.S. v. DeTemple, 162 F.3d 279, 287-88 (4th Cir. 1998)). "First, the court must view the facts and circumstances from the position of a reasonable observer outside the judicial system. . . . the reasonable outside observer is not 'unduly suspicious or concerned about a trivial risk of bias.'" Id. (citing DeTemple, 162 F.3d at 287-88). Second, "section 455(a) does not require recusal on the basis of suspicion or 'unsupported, irrational, or highly tenuous speculation.' . . . 'To disqualify onself in such circumstances would be to set the price of

6

maintaining the purity of appearance too high - it would allow litigants to exercise a negative veto over the assignment of judges.'" Id. (citing DeTemple, 162 F.3d at 287). Third, the more typical factual situation is less likely to create a biasing circumstance; "a unique factual situation is more likely to generate an appearance of partiality." Id. "'[T]he more common a potentially biasing circumstance and the less easily avoidable it seems, the less that circumstances will appear to a knowledgeable observer as a sign of partiality.'" Id. (citing DeTemple, 162 F.3d at 287). Finally, all facts and circumstances must be assessed; "[t]o mandate recusal under section 455(a), the question 'is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all the circumstances. To mandate recusal, however, there must be more than a trivial risk of bias.'" Id. (citing DeTemple 162 F.3d at 288).

Plaintiff advances several arguments, which it believes warrants recusal of the Court from this case. The Court will address each argument in turn.

    1.    Appearance of Impropriety

Plaintiff argues that the Court's relationship with defense counsel creates an appearance of impropriety. To support this contention, Plaintiff alleges the Court's impartiality is questionable because of an attorney-client relationship between the Court and defense counsel's husband, the Court's involvement in the political campaign of defense counsel's brother-in-law, a relationship between the Court's spouse and defense counsel, and an attorney-client relationship between the Court's sister and defense counsel's husband.

First, Plaintiff alleges that an attorney-client relationship exists between the Court and defense counsel's husband. Previously, as Plaintiff recognizes, the Court served as President of

the Oglebay Institute.[17] Oglebay Institute "is a nationally unique charitable organization offering quality programming for lifelong learning with a multi-disciplinary approach. Four departments offer programs in environmental education; performing arts; regional history interpretation and preservation; and visual and creative arts."[18] Defense counsel's husband, Henry Brann Altmeyer, is a partner in the law firm of Phillips, Gardill, Kaiser & Altmeyer, PLLC (PGKA). On its website, PGKA lists it serves as general counsel for the Wheeling Park Commission (Oglebay). Oglebay Resort and Conference Center (formerly known as Oglebay Park) is operated under the Wheeling Park Commission, a governmental subdivision "created by the legislature of the State of West Virginia on March 5, 1935 for the purpose of managing the parks of the City of Wheeling."[19]

Plaintiff alleges the existence of an attorney-client relationship because of PGKA's representation of the Wheeling Park Commission and the Court's affiliation with Oglebay Institute. Plaintiff is mistaken. Plaintiff includes the corporate records for Oglebay Institute in which the Court is named as the President of the Institute.[20] However, Plaintiff's records are dated May 29, 1998. Had Plaintiff found the current records, Plaintiff would have realized that the Court is no longer listed as President of the Institute; in fact, the Court is no longer listed as

---

[17] In prior years the head of the Board of Trustees was the President and the Chief Executive Officer was the Executive Director. Currently, the head of the Board of Trustees is the Chairperson and the Chief Executive Officer is the President. The Court was the head of the Board of Trustees at one time but was never the Chief Executive Officer.

[18] Oglebay Institute Mission Statement, http://www.oionline.com/about/index.htm (last visited November 17, 2009).

[19] Wheeling Park Commission, http://www.wheelingwv.gov/citygovernment.php?id=215 (last visited November 17, 2009).

[20] Pl. Br. Ex. 2.

an officer in any capacity.[21] While the Court is still a board member, Oglebay Institute and the Wheeling Park Commission are two separate, non-affiliated corporate entities with completely separate governing bodies.[22] Therefore, there is no attorney-client relationship between the Court and defense counsel's husband. Plaintiff's counsel failed to make an even minimum investigation, which would have revealed that the Wheeling Park Commission, which operates Oglebay Resort and Conference Center, formerly known as Oglebay Park, and Oglebay Institute are completely separate, unrelated entities.[23] In accordance with the Fourth Circuit test, this argument is without merit and borders on frivolous.

Plaintiff next alleges that the Court's impartiality is questioned because of his involvement with the political campaign of defense counsel's brother-in-law, Jim Altmeyer. Allegedly, this involvement establishes a long history between the Court and defense counsel's family. Jim Altmeyer, a member of the West Virginia State House of Delegates from 1974-76, was a candidate for U.S. House of Representatives for West Virginia in 1984.[24] The Court was not a magistrate judge in 1984 but was employed with the law firm of Seibert & Kasserman, L.C. in Wheeling, West Virginia. Regardless of his position at the time, Plaintiff only generally

---

[21] Oglebay Institute Administration, http://www.oionline.com/about/contacts.htm (last visited November 17, 2009).

[22] See West Virginia Secretary of State's Office Charities Search, http://apps.sos.wv.gov/cslist/profile.aspx?OrgID=1934 (last visited November 17, 2009). The Wheeling Park Commission, which operates Oglebay Park and Oglebay Resort and Conference Center, was adopted under W. Va. Code § 8-21-1 (2009).

[23] In fact, from time to time, Oglebay Institute and the Wheeling Park Commission have had an adversarial relationship - to wit: distribution of income from the Crispin Oglebay trust fund.

[24] See Def. Br. P. 4. See also, The Political Graveyard: Index to Politicians: Alsup to Amerson, http://politicalgraveyard.com/bio/alt-amersoon.html (last visited November 17, 2009).

states that the relationship "creates an appearance of impropriety because of a pre-existing personal and professional relationship with defense counsel and defense counsel's husband."[25] Plaintiff fails to allege sufficient factual grounds to allow a reasonable person to determine if such facts would lead to an appearance of impropriety. Plaintiff's argument that a twenty-five (25) year old association is a basis for recusal is absurd. Further, as the Fourth Circuit instructs, this allegation is far too unsupported, irrational, and highly tenuous to allow for recusal.

Third, Plaintiff alleges that the relationship between the Court's spouse and defense counsel creates an appearance of impropriety. Again, Plaintiff fails to allege sufficient factual grounds and offers no proof of the claim. The reality is, as defense counsel stated, she and Mrs. Seibert are merely social acquaintances who do not socialize together, and in fact, neither has ever been the guest of the other at their homes or any other place. This is another frivolous allegation by counsel that is totally and completely without merit. Plaintiff merely states that "[a]ny relationship between Judge Seibert's spouse and defense counsel further creates the appearance of impropriety."[26] There is no factual basis for the frivolous allegation. This, too, is far too unsupported, irrational, and highly tenuous to provide grounds for recusal.

Finally, Plaintiff alleges that an appearance of impropriety is created by the relationship between the Court's sister and defense counsel's husband. Plaintiff alleges that defense counsel's husband "had worked for the sister of Judge Seibert on some legal issues."[27] Again, Plaintiff fails to support this contention entirely. Plaintiff lists no cases or issues on which

---

[25] Pl. Br. P. 6.

[26] Pl. Br. P. 6.

[27] Pl. Br. P. 5.

10

defense counsel's husband performed any work. Additionally, an affidavit of James Gardill, managing partner of PGKA, states that the firm has never provided any legal representation to Sue Seibert Farnsworth, who is an attorney with the reputable firm Spilman Thomas & Battle, PLLC.[28] Once again, there is no proof to support this claim. This allegation, too, is without merit and is frivolous. It is unsupported, irrational, and highly tenuous to provide for recusal based on an appearance of impropriety.

Plaintiff also argues that the relationships, altogether, demonstrate that the Court has an interest, which can be substantially affected by the outcome of the proceedings. Specifically, Plaintiff argues that because of the relationships between the Court's family and defense counsel's family, the Court would have a "difficult time ruling against defense counsel, regardless of the motion made."[29] This is especially ironic and frivolous because defense counsel often represents the government in social security cases in which the Court recommends against the government's position.

Section 455(b)(5)(iii) mandates that a judge disqualify himself if he, his spouse, or a person within a third degree of relationship to either of them has an interest that can be substantially affected by the outcome of the proceeding. To support his contention that the Court has an interest in the case, Plaintiff relies on Potashnick v. Port City Const. Co., in which the judge was disqualified because he was found to have an interest substantially affected by the outcome of the proceeding. Potashnick v. Port City Const. Co., 609 F.2d 1101 (5th Cir. 1980).

---

[28] Def. Br. Ex. 1. See also, Spillman Thomas & Battle, PLLC, http://www.spilmanlaw.com/index.php?option=com_content&task=view&id=623&Itemid=2523 (last visited November 17, 2009).

[29] Pl. Br. P. 6.

In reversing the district court's decision to not recuse the judge, the Court found an appearance of impropriety after focusing on the business investments of the judge and the plaintiff's lawyer and the legal representation of the judge by the plaintiff's lawyer. Id. at 1110-11. In addition to general recusal through an appearance of impropriety, the Court found recusal was warranted under 455(b)(5)(iii) because the judge's father was the new partner of the plaintiff's attorney. Id. 1113-14. The Court held that "when a partner in a law firm is related to a judge within the third degree, that partner will always be 'known by the judge to have an interest that could be substantially affected by the outcome' of a proceeding involving the partner's law firm." Id. at 1113. Thus, it was the parent-child relationship between the judge and the partner of the plaintiff's attorney that necessitated recusal. Plaintiff offered no proof of any relationship between the Court and defense counsel, and there is no relationship between the Court and defense counsel. In fact, not only is there no familial relationship, there is no relationship within a third degree that could have an interest substantially affected by the outcome in this case (a medical malpractice action that originated at a Martinsburg, West Virginia, hospital).

    2.       Failure to Disclose

Plaintiff next argues that recusal is warranted because of the Court's failure to disclose his relationship with defense counsel to Plaintiff under section 455(e). Section 455(e) provides for a judge to seek a waiver for disqualification, if the disqualification arises under section 455(a), provided the waiver is preceded by a full disclosure. Because the Court failed to disclose any potential relationship with defense counsel's family, Plaintiff argues that it is too late to seek a waiver, and Judge Seibert must be recused.

In support of this argument, Plaintiff relies heavily on an Eighth Circuit opinion, in which

the Court remanded the issue to district court to revisit and more thoroughly consider the recusal request.[30] Moran v. Clarke, 296 F.3d 638, 649 (8th Cir. 2002). Plaintiff's reliance is misplaced. In Moran, the plaintiff Thomas Moran, a St. Louis police officer, sued the St. Louis Board of Police Commissioners along with other police officials alleging malicious prosecution and violation of his substantive due process rights. Moran, 296 F.3d at 639. After discovering the district court judge had a close social relationship with one of the named defendants, Moran filed a motion to recuse the district judge. Id. at 642. As Plaintiff correctly recognizes, the Eighth Circuit was troubled by the record in the case; however, Plaintiff failed to recognize, or conveniently excluded from its brief, that the Court was troubled by the social relationship between the defendant and the district judge. "The district judge's appearances at the same social events as Clarke and Smith brooks little mention. Judge, attorneys and public officials will often share public appearances. This does little to create the appearance of impropriety. The social relationship, however, invites more scrutiny." Id. at 649. The social relationship between the defendant and the district judge was more prevalent in Moran than in the case at bar. In Moran, the named defendant testified that she and the district judge knew each other for over twenty-one years; visited each other's homes on various occasions; and appeared at the same social events. Id. at 648.

Plaintiff suggests that the cases are similar because the Court assisted in the political campaign of defense counsel's brother-in-law in 1984, more than twenty-five years ago. This, as Plaintiff suggests, demonstrates a personal and professional relationship between Judge Seibert and defense counsel's family. Again, this argument fails. As previously stated, the Eighth

---

[30] Pl. Br. P. 7-8.

13

Circuit found it "particularly worrisome" that the district judge failed to disclose the social relationship between the judge and the named defendant - a relationship in which the named defendant testified that she and the district judge visited each other's homes on various occasions. No such allegations were made by Plaintiff in this case. Further, no such proof was offered in this case. At best, Plaintiff alleges a one-time, *potential* relationship between the Court and defense counsel's brother-in-law twenty-five years ago. There's no mention of a continuing relationship, nor is there any mention of the Court visiting the home of either defense counsel or her brother-in-law.

Therefore, though judges may seek waiver of disqualifications under section 455(e), the Court had no duty to seek a waiver. His alleged "relationships" with defense counsel and her family do not rise to qualify as an appearance of impropriety.

3. Fractious Relationship

Finally, Plaintiff argues that recusal is warranted because the Court wrongfully placed the burden on Plaintiff, the non-moving party, and personally attacked Plaintiff's counsel.

To support the argument that the Court wrongfully placed Defendant's burden on the Plaintiff, Plaintiff references the September 10, 2009, evidentiary hearing and argument on Defendant's Motion for Protective Order.[31] Federal Rule of Civil Procedure 26(c) allows a party to seek a protective order to protect certain discovery. "The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant." Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D. N.Y. 2003). To fulfill the burden, the moving party "must show good cause by demonstrating a particular need for protection." Leucadia, Inc. v. Applied Extrusion

---

[31] Doc. No. 126.

Technologies, Inc., 998 F.2d 157, 166 (3rd Cir. 1993).

Defendant filed its motion for protective order to strike the deposition notice for an expert witness citing his unavailability as the main reason to strike.[32] The burden was therefore on Defendant to prove that the deposition notice should be stricken. At no time did the Court shift this burden. During the hearing, the Court asked Plaintiff's counsel to tell him "the name of the Federal Rule of Civil Procedure or the case that holds that the amount of notice that you gave Dr. Clancy considering his position is sufficient under the provisions of Rule 30(a)(1), I think."[33] This statement did not place the burden on Plaintiff to prove that the deposition notice should not be stricken. The statement only asked for Plaintiff's counsel to cite authority for its argument that the notice given to the expert witness was sufficient. This statement did not shift the burden, nor does it demonstrate an appearance of impropriety warranting recusal of the Court.

Plaintiff next argues that a fractious relationship exists based on the Court's comments during the September 10 evidentiary hearing. After ruling that the parties had until September 15, 2009, to agree on a date, time, and place for the expert's deposition, Plaintiff's counsel requested that the Court "do the same thing with respect to" other deponents in the case.[34] The Court then proceeded to address counsel's behavior with respect to setting the depositions in the case. Plaintiff now argues that these comments, including a reference to the age of Plaintiff's counsel, show an appearance of impropriety, which may mandate recusal.

Though Plaintiff's counsel may not have appreciated the comments, they are not grounds

---

[32] Doc. No. 118.

[33] Doc. No. 134, P. 12, ln 13-16.

[34] Doc. No. 134 P. 15-16.

15

for recusal.  See Lentz, 524 F.3d at 530.  Only remarks that "display a deep-seated favoritism or antagonism that would make fair judgment impossible" may be sufficient for recusal.  Liteky, 510 U.S. at 555.  The Supreme Court cited an example of what may be sufficient for recusal: "the District Judge in Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German-American defendants, [stated]: 'One must have a very judicial mind, indeed not [to be] prejudiced against the German Americans' because their 'hearts are reeking with disloyalty.'" Id.  The Court further explained that "[*n*]*ot* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.  A judge's ordinary efforts at courtroom administration - even a stern and short-tempered judge's ordinary efforts at courtroom administration - remain immune." Id. at 555-56.

The Court's statements concerning scheduling depositions essentially asked Plaintiff's counsel if he wanted to do it the hard way or the easy way.  These comments do not rise to the level of deep-seated favoritism or antagonism to show that fair judgment would be impossible. The statements only suggest the Court's disdain for the manner in which Plaintiff's counsel was conducting himself in attempting to schedule the depositions.

Plaintiff's counsel also argued orally that he did not appreciate the Court's reference to his age and was concerned how the Court knew his age.  The Court must confess that whenever counsel cannot agree on a day, time, and place for a deposition, it always "Googles" counsel it does not know to determine if counsel is young, inexperienced and doesn't know any better or is old, experienced and simply playing games.  It's clear from Plaintiff's counsel website that

Plaintiff's counsel is old and experienced. It is equally clear from the record in this case that Plaintiff's counsel is playing games. Neither this action nor the reference to Plaintiff's counsel's age rose to the level of deep-seated favoritism or antagonism to create an appearance of impropriety, which would warrant recusal.

IV. Decision

Plaintiff's Motion for Recusal is **DENIED**.[35]

Filing of objections does not stay this Order. Any party may, within ten (10) days after being served with a copy of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

DATED: November 17, 2009

*/s/ James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE

---

[35] Only the District Court can vacate its Order of Referral.